## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DALLAS SIMMONS,**

      **Petitioner,**

**vs.**                         **Case No. 4:13cv252-MW/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Dallas Simmons, proceeding pro se, filed a 28 U.S.C.

§ 2254 petition on April 20, 2013.  ECF No. 1.  On February 19, 2014,

Respondent filed an answer, with exhibits.  ECF No. 13.  Petitioner filed a

reply on March 12, 2014.  ECF No. 15.

The matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all issues raised, the undersigned has determined that no evidentiary

---

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida
Department of Corrections, for Michael D. Crews.  Julie Jones became Secretary on
January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil
Procedure 25(d).

hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not

entitled to federal habeas relief, and the § 2254 petition should be denied.

## Procedural Background

By information filed on December 17, 2001, in the Second Judicial

Circuit, Leon County, in case number 01-04478AF, the State of Florida

charged Petitioner Dallas Simmons with two counts, in connection with

events that took place on December 2, 2001: (1) robbery, a second degree

felony, in violation of section 812.13(2)(c), Florida Statutes; and (2)

resisting an officer without violence, a first degree misdemeanor, in

violation of section 843.02, Florida Statutes.  ECF No. 13 Ex. A at 1.[2]  On

January 18, 2002, Simmons entered a nolo contendere plea to the charges

and was sentenced to 180 days in jail, with credit for 47 days served,

followed by 2 years of probation.  *Id.* at 14-31.

On October 7, 2003, a violation report was filed, alleging Simmons

violated several conditions of his probation by failing to make full and

---

[2]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 13.

truthful reports to his probation officer (Condition 1), failing to pay any of the monthly costs of his supervision (Condition 2), committing new law violations in Georgia (Condition 5), as well as failing to comply with probation officer's instructions by not returning to Florida after his interstate transfer was rejected and by failing to make monthly payments toward investigation costs (Condition 9). *Id.* 32-36. After Simmons served his Georgia prison sentence, he was picked up by the Leon County Sheriff's Office and returned to Florida. *See id.* at 39-41. He entered an open plea to the violations of probation (VOP) and his signed, written admission was filed in open court on December 18, 2009. *Id.* at 43-44; Ex. B (transcript of VOP hearing). The trial judge conducted a plea colloquy, accepted Simmons' plea, adjudicated him guilty, and sentenced him to 10 years in prison, with credit for 220 days time served. Ex. A at 47-56 (written judgment and sentence); Ex. B (transcript of plea and sentencing hearing).

Simmons appealed his conviction and sentence to the First District Court of Appeal (DCA), assigned case number 1D09-6540, and his counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), indicating no issues of arguable merit existed. Ex. D. Counsel also filed a motion to allow Simmons to file a pro se brief, which the First DCA granted;

however, Simmons did not file a brief.  Exs. E (motion), F (order).  On

November 3, 2010, the First DCA per curiam affirmed the case without a

written opinion.  Ex. G; Simmons v. State, 48 So. 3d 58 (Fla. 1st DCA

2010) (table).  The mandate issued November 30, 2010.  Ex. H.

On February 18, 2011, Simmons filed a pro se motion for post-

conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the

state trial court.  Ex. I at 1-9.  The state post-conviction court held an

evidentiary hearing on August 26, 2011.  Id. at 17-65.  On the record at the

conclusion of the hearing, the judge made findings and denied the Rule

3.850 motion.  Id. at 60-64.  The judge entered a written order October 17,

2011, finding an amended scoresheet was filed in open court at the

evidentiary hearing and "[a]ll other requests made by the defendant's

motion for post conviction relief are denied."  Id. at 16.  Simmons appealed,

pro se, to the First DCA and filed an initial brief in case number 1D11-5368.

Ex. J.  The State filed an answer brief.  Ex. K.  The First DCA per curiam

affirmed the case without a written opinion on October 25, 2012.  Ex. L;

Simmons v. State, 100 So. 3d 683 (Fla. 1st DCA 2012) (table).  The

mandate issued November 20, 2012.  Ex. M.

On January 11, 2013, Simmons filed a pro se motion for reduction or

modification of his sentence pursuant to Florida Rule of Criminal Procedure

3.800(c).  Ex. N.  The state trial court denied the motion by order rendered

January 22, 2013.  Ex. O.

As indicated above, on April 20, 2013, Simmons filed a § 2254

petition in this Court.  ECF No. 1.  Simmons raises four grounds:

> (1) Violation of the Fifth Amendment "on and about Due
> Process and Double Jeopardy" where the trial court used
> offenses from the State of Georgia "to create points on
> scoresheet" and send Simmons to prison.  *Id.* at 4.  "The
> offenses that the courts relied on to impose the 10-year
> sentence are offenses that has [sic] been justified by the State
> of Georgia."  *Id.*  "The State of Florida used those offenses, but
> awarded no credit."  *Id.*

> (2) Violation of the Eighth Amendment where the courts denied
> relief in the Rule 3.850 proceeding on the failure to convey a
> plea "when Defense Counsel's own evidence of conveyance of
> the plea was a fax he received from the State and his word."
> *Id.*  Further, the court amended Simmons' scoresheet "to
> prevent awarding [him] credit when the judge decision was
> based on the contents of the scoresheet, still no resentencing."
> *Id.*

> (3) Ineffective Assistance of Counsel – Defense counsel failed
> to convey a plea offer of 60 months "until after the State began
> to press for the maximum sentence and the plea was no longer
> available."  *Id.* at 5.

> (4) "Time served for jail credit on offenses used in scoresheet
> and for the detainer."  *Id.*  Simmons had a detainer placed on

him March 25, 2004, which "remained active throughout the
time of [his] confinement in Georgia," keeping his security level
at maximum and preventing him from participating in
educational programs.  *Id.*

Respondent has filed a response, with exhibits.  ECF No. 13.  Simmons

has filed a reply.  ECF No. 15.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.  Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 131 S.Ct. 1388, 1398

(2011); Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d

1272 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt.'"  <u>Cullen</u>, 131 S.Ct. at 1398

(quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and <u>Woodford v.

Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the

record that was before the state court that adjudicated the claim on the

merits."  <u>Cullen</u>, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel (IAC), the U.S.

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

<u>Strickland</u>, 466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant

must show that counsel's performance fell below an objective standard of

reasonableness."  <i>Id.</i> at 688.  To demonstrate prejudice, a defendant "must

show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1:  Georgia Offenses Included on Scoresheet

In his first ground, Petitioner Simmons argues the trial court should not have used his Georgia offenses "to create points" on his scoresheet and send him to prison, in violation of the Fifth Amendment, Due Process, and Double Jeopardy. ECF No. 1 at 4. He also argues "[t]he State of Florida used those [Georgia] offenses, but awarded no credit" on his sentence for time he served in Georgia. *Id.*

Simmons raised this claim in the second ground of his Rule 3.850

motion, although he presented it only in terms of state law.  Ex. I at 5-7.  In

its response to the motion, the State conceded that "the guideline score

sheet used to calculate the Defendant's score was incorrect" and "[t]he

State should not have scored the offenses the Defendant was convicted of

subsequent to his initial plea."  *Id.* at 13.  At the evidentiary hearing on the

Rule 3.850 motion, the State filed a corrected scoresheet.  *Id.* at 19-20; Ex.

P.  Simmons subsequently indicated the revised score sheet submitted by

the State was correct and he no longer wished to proceed with the second

ground of his motion.  Ex. I at 26.  In denying the claim, the state post-

conviction trial court made the following findings:

> Now, let's move on to Ground 2 of your motion which is
> the score sheet error.  The Court will file with the Court – in the
> Court file, now, a new amended score sheet which gives the
> case a total of 36 points with the guidelines being a lowest
> permissible sentence of 15 [sic].  The maximum being 15.
>
> I am – and I am looking at – and I have reviewed the
> West case cited by the State as well as the Brooks'[3] case.
> And I will concur that, in accordance with Florida law, you are
> not entitled to credit as reflected on that score sheet for time
> served in another jurisdiction on the charge on the violation of
> probation.  And that is the First District Court case in West.

---

[3]Brooks v. State, 969 So. 2d 238 (Fla. 2007).

You brought up an additional ground under Ground 2 and I'll address the issue of would that have made a difference in the sentencing of Judge Dempsey.

I have had an opportunity to review the Court file and, specifically, the colloquy that occurred between yourself, Mr. Thomas, Ms. Ray.  And, in outlining, as the Court can consider, Mr. Simmons, even though you can't score and get – you can't get credit for the time served in another jurisdiction, the Court in its sentencing in looking at the range of possibilities – and Judge Dempsey does cite that in the transcript.  I think it's on page eight, page ten, and page 13 of the transcript.

Very specifically, Ms. Ray outlined the prior incidents of your, sir, contact with the criminal justice system.  She, in my review of that, weighed that and went and gave you a sentence, not the recommended sentence as the State was, in fact, wanting the Court to sentence you to.

In an open plea, the Court, based on the transcript, thoroughly went through the prerequisites under Florida law as to your maximum and minimum penalties.  And, based on my review of the prior record that she looked at and was told based on the transcript – and in the Court file I'm going to make a finding under Brooks that I think the outcome would have been – her ten year sentence would have been the same if not higher.  But I think it would have been the same sentence you received and was imposed by Judge Dempsey with 220 days credit for time served.

So, on that, I'm going to grant – I'm going to deny – I'm going to grant your right to have this reflected.  But I'm going to deny Ground 2 as to the fact that you would like to have a new sentence or new sentencing in reference to that under the Brooks' case.

*Id.* at 62-64.

As an initial matter, this ground was not exhausted in state courts as a federal claim and is not cognizable in a § 2254 proceeding because the claim is one based on state law.  "Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes." Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *Id.* at 1055; *see* Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) ("The writ of habeas corpus, 28 U.S.C. § 2254 . . . , was not enacted to enforce State-created rights.").  *Accord, e.g.*, McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).  As the Eleventh Circuit has explained, "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts can not review a state's alleged failure to adhere to its own sentencing procedures."  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).  *See* Suitor v. Sec'y, Dep't of Corr., No. 8:09cv2555-T-17AEP, 2010 WL 3467364, at *7-8 (M.D. Fla. Aug. 31, 2010) (district court order denying § 2254 petition which included ground alleging sentence violated Sixth and Fourteenth Amendments and Double Jeopardy

because of score sheet error and finding claim not cognizable in federal

habeas, unexhausted as federal claim, procedurally defaulted, and

meritless).

Addressing the merits, the state post-conviction trial court's ruling,

affirmed on appeal without opinion, is entitled to deference and review is

limited to the record before the state court.  *See* Cullen, 131 S.Ct. at 1388.

The exhibits in the record support the state post-conviction trial court's

findings and determination regarding the corrected scoresheet.  Simmons

appears to continue to argue he should be resentenced using the corrected

scoresheet.  The state post-conviction court found, however, any new

sentence would be "the same if not higher."  Ex. I at 64; *see* Brooks, 969

So. 2d at 241 ("When scoresheet error is presented . . ., any error is

harmless if the record conclusively shows the trial court *would have*

*imposed* the same sentence using a corrected scoresheet.").  The record of

the plea and sentencing hearing reflects that the State asked for the

maximum sentence, 15 years in prison.  Ex. B at 16.  The prosecutor

explained, "I understand that he only scores 47 months.  But, if you look at

the timing and the course of conduct by this man, I think that the only way

to stop him from continuing this behavior is to make sure that he's not out

in the community to continue to commit robberies." *Id.* at 16-17.  With the corrected scoresheet, Simmons scored 36 points, instead of 91.4 points. *Compare* Ex. I at 62, *with* Ex. A at 45-46.  Given the prosecutor's argument at sentencing, and the trial judge's imposition of 10 years in prison, much greater than the minimum permissible sentence reflected on the score sheet, the record supports the post-conviction trial court's finding that any new sentence would have been the same with the corrected scoresheet.

Based on the foregoing, even assuming this ground can be considered in federal habeas and was properly exhausted, Simmons has not shown that the state court's adjudication involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Grounds 2 & 3:  IAC – Failure to Convey Plea Offer

In his second and third grounds, Simmons raises essentially the same claim, alleging that trial counsel was ineffective for failing to convey a plea offer of sixty (60) months in prison "until after the State began to press for the maximum sentence and the plea was no longer available."  ECF No. 1 at 5.  Simmons asserts defense counsel's only evidence of conveyance

of the plea, in addition to his word, was a fax he received from the State.

*Id.* at 4-5.

Simmons raised this claim as the first ground in his Rule 3.850

motion in state court.  Ex. I at 3-4.  In denying the claim, the state post-

conviction trial court judge made the following findings on the record:

> In Ground 1, Mr. Simmons, you have alleged that your counsel, Mr. Thomas, failed to provide you with the plea offer of 60 months and, in essence, was ineffective in that regard.
>
> The Court, on the 3.850, you bear the burden to show that, in fact, your counsel was ineffective under the Strickland v. Washington case –
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:  – which says no only does he have to – the actions of an attorney have to fall below the normal standard of practice or the standard for an attorney with his experience and knowledge in the area of criminal law, but also that, based on the act, there would have been – there was some prejudice that would have changed technically the outcome of the case.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: I'm going to find that – and I've listened to your testimony as well as the testimony of Mr. Thomas.  And I'm going to deny your Ground 1, based on the testimony that he had communicated that offer to you of 60 months, but you were waiting to see what was occurring with the score sheet.  And I'm going to rely on State's Exhibit 1 as well, in addition to State's Exhibit 2.

> So I'm going to deny Ground 1, based on the fact that you
> have not met that burden under the Strickland v. Washington
> test.  Okay?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And I will state also – the Court has read and, in
> fact, requested that the plea colloquy be presented and
> transcribed.  And I'll note that the Court has read that plea
> colloquy thoroughly.  And, will reference for purposes of the
> record, that this was an open plea before Judge Dempsey on
> December the 18th and on 11/23 case management inmates
> are not normally brought as a matter of course to that.
>
> But, albeit, whatever that is, the communication, I will
> credit the testimony of Mr. Thomas reference to the
> communication you had in reference to the plea offer.

*Id.* at 60-62.  This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.  *See*

Cullen, 131 S.Ct. at 1388.

The exhibits in the record support the state post-conviction trial

court's findings and determination that Simmons did not prove deficient

performance or prejudice.  Specifically, during the evidentiary hearing,

Simmons testified:

> THE DEFENDANT:  Mr. Thomas was appointed to me on
> 10/20/09.  On 11/23/09 is which, the date that I became aware
> of the 60 month plea with DOC I believe it was.  It was no
> longer acceptable at that point in time.  It was no longer on the
> table for me to receive.

Now, during the time that Mr. Thomas represented me, either I didn't get the fully understanding of what was going on about this plea. Mr. Thomas and I, we talked about the time issue about the time. And, Mr. Thomas and I, we also had a conversation about the – the – the possibility of it being a plea offer.

THE COURT: Okay.

THE DEFENDANT: Well, I never understood completely what was going on. But it would have been my decision to see a score sheet before I take a plea either way it went. But I never had any knowledge of the plea, ma'am.

Ex. B at 23-24. Simmons' trial counsel, Ronald Thomas, testified at the

evidentiary hearing:

Q Mr. Thomas, did you get a plea offer to convey to your client in this case, Dallas Simmons, at any point during the pendency of his violation of probation case?

A I did.

. . . .

A My notes indicate that I received a plea offer to adjudicate him guilty, revoke and terminate his probation, spend 60 months in the Department of Corrections and pay $100 cost of prosecution and that was relayed to me on November 16th, 2009 at 11:58 a.m. by you, Ms. Kathy Ray.

Q And that was in the form of an e-mail [State's Exhibit 1], is that correct?

A It was.

*Id.* at 33-34.  Thomas further testified that he relayed the plea offer to

Simmons:

> Q And did you relay the plea offer of 60 months in the
> Department of Corrections to Mr. Simmons?
>
> A I did.
>
> Q And how do you know you relayed that plea offer to Mr.
> Simmons?
>
> A Well, various – I – my notes indicate that I contacted him on
> 11/16 when he was in the M Pod and relayed the offer to him.  I
> made notes in my file.  I also remember him very well because
> he was such a nice man.  I remember having conversation with
> him about the plea.
>
> Q So it would be fair to say that you contacted the defendant in
> the case via video from your office at the jail on the same day
> that the State relayed the offer of 60 months in the Department
> of Corrections for your client?
>
> A I did.
>
> Q Okay.  And do your notes reflect what the defendant in this
> case had to say about the State's plea offer of 60 months in the
> Department of Corrections?
>
> A It does.  My notes indicate that the client does not want to
> accept the 60 month offer until he sees the score sheet.  The
> next sentence says, possibly will plea open to Judge Dempsey.

*Id.* at 35-36.  Thomas testified that he received the score sheet on

December 18, 2009, the day of the VOP plea and sentencing hearing, and

he advised Simmons of the score sheet reflecting 47.55 months to 15

years. *Id.* at 36-37.  Thomas testified he did not recall the State revoking

the plea offer, he advised Simmons to take the plea but Simmons did not

want to accept the offer of 60 months in prison, and Simmons decided

instead to enter an open plea:

> Q Okay.  In either event, did you discuss with him the score
> sheet prior to you advising him, one way or another, whether he
> should accept a plea by the State of Florida or enter into an
> open plea with the Court?
>
> A I did.
>
> Q Okay.  And does either your notes or your actual recollection
> of your conversations with Mr. Simmons that day, did he tell
> you he was not inclined to take the – or did he reject the State's
> 60 month offer, after you had reviewed the score sheet with
> him?
>
> A I remember speaking with Mr. Simmons.  I remember
> advising Mr. Simmons that the judge was likely to give him
> more than 60 months and I advised him to take the 60 months.
>
> Q And do you recall whether or not he responded to that?
>
> A I don't remember what he said exactly.  But I do remember
> feeling frustrated that it was going to be a plea open to the
> Court.
>
> Q Okay.  So he did not want to take the 60 months, is that
> correct?
>
> A That's correct.

Q And we went on to have an open plea and sentencing in front of the Court, is that correct?

A Yes.

Q All right.  Did you ever tell the defendant – let me strike that. Is your recollection of your discussions with myself, as a prosecutor in this case, was it your understanding that at the time that I made the 60 month DOC offer I was well aware of the charges that he had been convicted of in Georgia?

A I remember explaining to you that he had done a certain amount of years, a considerable – a very considerable amount of time in Georgia, based on the new law offenses.  And I was hoping to persuade you to give him credit for that.

Q And, to be clear, the State never revoked any five year plea offer based on some time after making that plea offer finding out about these charges that occurred in Georgia, correct?

A My notes don't reveal any revocation of a plea offer nor do I recall any time in which the State revoked the 60 month offer.

*Id.* at 37-39; *see id.* at 46.  Simmons then made the following argument:

Mr. Thomas was appointed to myself on 10/20/09.  On 11/23/09, I claimed that that was the first time that I've heard of the 60 month plea.  To my recollection, Your Honor, that was the first time I heard of the 60 month plea.

I went on to have my court date first.  And, on 12/18/09, I received 10 years DOC for violating a two year probationary period of time.  Had I known of the existence of the 60 month plea, I would have accepted this offer as a favor – favorable offer instead of being placed in the range of 47.55 months and the maximum of 15 years sentence.

*Id.* at 48-49.

The state post-conviction trial court applied Strickland and

determined Simmons did not satisfy Strickland.  *Id.*   In so finding, the court

accepted the testimony of Thomas over that of Simmons to the extent that

it differed.  Notably, the testimony of both was consistent that the 60-month

plea offer was conveyed in November 2009 and that Simmons would not

accept it without first seeing a scoresheet.  The court properly determined

the credibility issues, and the record supports the state court's findings.

Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011)

("Determining the credibility of witnesses is the province and function of the

state courts, not a federal court engaging in habeas review.").  "Federal

habeas courts have 'no license to redetermine credibility of witnesses

whose demeanor was observed by the state court, but not by them.'" *Id.*

(quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

Simmons has not shown that the state court's adjudication of this

ground involved an unreasonable application of clearly established federal

law or that it based on an unreasonable determination of the facts.  *See* 28

U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## <u>Ground 4</u>:  Jail Credit

In his fourth ground, Simmons asserts the state court should have allowed him jail credit for time he served in prison in Georgia, for his Georgia offenses scored on the score sheet, because the Georgia offenses were scored on his score sheet and because he had a detainer placed on him March 25, 2005, by Leon County, Florida.  ECF No. 1 at 5.  Simmons raised this claim as part of Ground 2 of his Rule 3.850 motion in state court.  *See* Ex. I at 6-7, 18, 27.

As indicated in the analysis of Ground 1, *supra*, the state post-conviction trial court denied this claim, explaining that Simmons was "not entitled to credit as reflected on that score sheet for time served in another jurisdiction on the charge on the violation of probation" as "you can't get credit for the time served in another jurisdiction."  Ex. I at 62-63.  This ruling, affirmed on appeal without opinion, is entitled to deference and review is limited to the record before the state court.  *See* <u>Cullen</u>, 131 S.Ct. at 1388.

The state court did not err in determining Simmons was not entitled to credit for prison time served in Georgia on charges unrelated to his Florida case.  *See* <u>West v. State</u>, 22 So. 3d 797, 798 (Fla. 1st DCA 2009)

(explaining "a defendant is certainly not 'entitled' to credit for out-of-state
time served *unrelated to the Florida case*, and we are unaware of any
authority that would even permit the trial court to award credit under such
circumstances").  *Cf*. <u>Kendrigan v. State</u>, 941 So. 2d 529, 529 (Fla. 4th
DCA 2006) ("Appellant is entitled to credit for time served in jail from the
date of his arrest for the new offenses if the new offenses constituted the
basis for the revocation of probation in the instant cases."); <u>Cooper v.
State</u>, 967 So. 2d 928, 929 (Fla. 1st DCA 2007) (holding inmate not entitled
to jail credit on Jackson County VOP sentence for time served in Broward
County jail after arrest in Broward County; distinguishing <u>Kendrigan</u> "as it
awarded credit for jail time from the date of arrest for the new offenses
because the new offenses constituted the [only] basis for revoking
probation" and "[i]n this case, appellant's probation was revoked based on
his arrest for new offenses *and* other violations of the conditions of his
probation").  Further, the court did not err in denying Simmons credit for
time served while subject to a detainer for an unrelated charge.  *See*
<u>Gethers v. State</u>, 838 So. 2d 504, 508 (Fla. 2003) ("[T]he filing of a detainer
or a hold does not have the same effect as executing or transmitting an
arrest warrant.  When a county issues a detainer or hold to another county,

it is merely requesting either to hold the defendant for the second county or to notify the second county when release is imminent so that the second county can act.  In that case, no jail credit need be awarded by the second county for time served in the first county for the period during which the detainer or hold is lodged.").

Indeed, during the colloquy in his plea hearing, Simmons asked about credit for time served in Georgia:

> THE DEFENDANT: I would like to know, Your Honor, with the time that I spent, you know, in the penal system period, would any of that time be available for me as time served?
>
> THE COURT: I'll certainly consider that.  But, as far as giving you actual credit, I don't think he's entitled to that, right, Ms. Ray?
>
> MS. RAY: He's not.
>
> THE COURT: Okay.  So I'm not going to give you actual credit for that.  But that's certainly going to be one thing I'm going to consider –
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:  – when I impose the sentence.  And you understand that I'm going to be imposing a sentence somewhere between just under four years in prison up to the maximum of 15 years in prison?
>
> THE DEFENDANT: Yes, ma'am.

THE COURT: And I think the credit you are entitled to in this case – is it 220, Madam Clerk?

THE CLERK: Yes, ma'am, 220.

THE COURT:  220 days.  So that's the actual credit that you'll be getting on the case.  Has anyone threatened you in any way in order to get you to enter into this plea?

THE DEFENDANT: No, ma'am.

THE COURT: Has anyone promised you anything, either a particular sentence or any other promise in order to get you to enter into this plea?

THE DEFENDANT: No, ma'am.

Ex. B at 7-8.  As indicated above, the court sentenced him to ten years in prison, with credit for 220 days time served.  *Id.* at 18; Ex. A at 47-54.

Simmons has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## <u>Conclusion</u>

Based on the foregoing, Petitioner Dallas Simmons is not entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones for Michael D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on March 24, 2016.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**